United States District Court
Southern District of Texas
**ENTERED**
January 08, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| AUNDRA B JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-338 |
| | § | |
| BRYAN GORDY, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**
**TO GRANT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO**
**DENY PLAINTIFF'S MOTION TO AMEND OR SUPPLEMENT COMPLAINT**

In this prisoner civil rights action, Plaintiff Aundra B. Jackson complains that various prison officials violated his Eighth Amendment rights by failing to protect him from a violent attack by other inmates and acting with deliberate indifference to his serious medical needs. (D.E. 1). With regard to his failure to protect claims, Defendants Jeremy De Los Santos, Captain Martinez, and Nicholas Santellano have filed a Motion for Summary Judgment contending that Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). (D.E. 71). Defendants Pamela Wagner, Janet White, April Flores, and Robert Schales have filed a Motion for Summary Judgment contending they are entitled to qualified immunity as to Plaintiff's deliberate indifference claims. (D.E. 86).

Following the submissions of the summary judgment motions, Plaintiff filed a Motion for Leave to Amend or Supplement Original Complaint. (D.E. 98). For the reasons stated herein, it is respectfully recommended that the Court grant the motions for

summary judgment in their entirety and deny the motion to amend or supplement the complaint.

## I.      JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.

## II.     PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and he is currently serving a twenty-year sentence for murder entered on April 6, 2015, in Harris County, Texas.  The facts giving rise to Plaintiff's claims in this lawsuit occurred during Plaintiff's assignment to the Garza East Unit (GEU) in Beeville, Texas, in September, 2015.

Plaintiff filed suit on August 11, 2016, raising claims of failure to protect and deliberate indifference to his serious medical needs.[1]  Plaintiff named the following fifteen (15) individuals as defendants: (1) Bryan Gordy, GEU warden; (2) Phonso Rayford, GEU assistant warden; (3) Captain Martinez; (4) Lieutenant Jeremy De Los Santos; (4) Officer Santiana; (6) Dr. Philemon D. Chang; (7) R. Martisek, Risk Manager of GEU Mental Health Services; (8) Nurse L. Webb; (9) Nurse Practitioner (NP) Pamela K. Wagner; (10) Nurse Janet E. White; (11) LVN April Flores; (12) Mental Health Counselor (MHC) Robert D. Schales; (13) Amy M. Hernandez, Medical Assistant, (14) Cory F. Jonney, John Sealy doctor; and (15) B. Barnett, GEU warden.

---

[1] Plaintiff's claims were opened under this case no. C.A. No. 2:16-cv-338, and also under C.A. No. 2:16-cv-339. Plaintiff's claims were consolidated under C.A. No. 2:16-cv-338, and Case No. 2:16-cv-339 was closed.  (D.E. 6).

On September 28, 2016, a *Spears*[2] hearing was conducted.  Following the hearing, Plaintiff was afforded two weeks to supplement his complaint, and on October 13, 2016, Plaintiff filed his supplement.  (D.E. 12).  In his supplement, Plaintiff clarified that he sues some defendants in both their individual and official capacities. (D.E.12). On October 28, 2016, the undersigned issued a Memorandum and Recommendation (October 28, 2016 M&R), recommending that the Court: (1) retain Plaintiff's Eighth Amendment failure to protect claims against Defendants Martinez, De Los Santos, and Santiana in their individual capacities; (2) retain Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Wagner, White, Flores, and Shales in their individual capacities; (3) dismiss with prejudice Plaintiff's remaining claims against the remaining defendants for failure to state a claim and as frivolous.  (D.E. 13).  Plaintiff filed objections on November 7, 2016 (D.E. 17), and the October 28, 2016 M&R remains pending before the District Judge.

The undersigned ordered service on Defendants Martinez, De Los Santos, Santiana, Wagner, White, Flores, and Shales.  (D.E. 14).  Each defendant subsequently filed his or her answer to the complaint.  (D.E. 18, 19, 27, 44).  As part of his answer, the Court was informed that Defendant Santiana's name was Nicholas Santellano.  (D.E. 27). The undersigned subsequently directed the Clerk of the Court to make the appropriate substitution.  (D.E. 59).

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

On March 17, 2017, the undersigned entered an order withdrawing Defendant Martinez's answer and directing the parties to consult as to whether Captain Consuelo Gonzales is the proper party defendant.   (D.E. 47).   On May 17, 2017, Defendant Gonzales filed her answer to the complaint.   (D.E. 64).   Nevertheless, no order has been entered as to whether Defendant Gonzales should be substituted in place of Defendant Martinez.

NP Wagner, Nurse White, and LVN Flores previously filed a motion to dismiss for failure to exhaust administrative remedies.   (D.E. 26).   In a Memorandum and Recommendation issued on May 5, 2017 (May 5, 2017 M&R), the undersigned recommended denying the motion to dismiss.   (D.E. 61).   No objections to the May 5, 2017 M&R were filed, and it is pending before the District Judge.

On June 20, 2017, Lieutenant Santos, Captain Martinez, and Officer Santellano (collectively referred to as "Security Defendants") filed their Motion for Summary Judgment, contending that Plaintiff failed to exhaust his administrative remedies as to his failure to protect claims.   (D.E. 71).   Plaintiff has filed several responses to the Security Defendants' summary judgment motion.   (D.E. 80, 81, 84).

On August 7, 2017, NP Wagner, Nurse White, LVN Flores, and MHC Schales (collectively referred to as "Medical Defendants") filed their Motion for Summary Judgment, contending that they are each entitled to qualified immunity.   (D.E. 86).

Plaintiff has filed two responses to the Medical Defendants' summary judgment motion. (D.E. 100, 101).[3]

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.* Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider

---

[3] Plaintiff styled one of his responses as a "Motion of Opposition to Defendants['] Motion for Summary Judgment." (D.E. 100). In a separate order entered contemporaneously with this Memorandum and Recommendation, the undersigned construed Plaintiff's motion as a response and removed his motion as a pending matter in this case.

hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id.* Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Bazan v. Hidalgo County*, 46 F.3d 481, 490 (5th Cir. 2001).

IV.    **DISCUSSION**

## The Security Defendants' Motion for Summary Judgment

### A.    Summary Judgment Evidence

The Security Defendants offer the following summary judgment evidence:

Exh. A:      Plaintiff's Step 1 Grievance – Grievance No. 2016088690 (D.E. 71-1).

Exh. B:      Plaintiff's Step 1 and Step 2 Grievances – Grievance No. 2016089123 (D.E. 71-2).

Plaintiff, in turn, offers the following summary judgment evidence:

Exh. A:      Plaintiff's Step 1 Grievance – Grievance No. 2016088690 (D.E. 81, pp. 9-10).

Exh. B:      Plaintiff's Step 1 Grievance – Grievance No. 2016089123 (D.E. 81, pp. 11-12).

Exh. C:      Plaintiff's Step 2 Grievance – Grievance No. 2016089123 (D.E. 81, pp. 13-14).

Exh. D:      Plaintiff's Grievance Investigation Worksheet - Grievance No. 2016089123 (D.E. 84-2).

Exh. E:      Plaintiff's Grievance Investigation Worksheet - Grievance No. 2016089123 (D.E. 81, pp. 15-16).

Exhs. F:      Plaintiff's Grievance Record Inquiry (D.E. 81, p. 17).

Exhs. G and H:      Plaintiff's Notices of Extension (D.E. 81, p. 18-19).

Exh.   I:      Instructions on How to Prepare Grievances (D.E. 81, p. 20).

Plaintiff's verified complaint and testimony at the *Spears* hearing also serve as competent

summary judgment evidence.  *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969,

at *3 (S.D. Tex. Mar. 20, 2017). Accordingly, the competent summary judgment evidence establishes the following:

### (1)   Plaintiff's Verified Complaint and *Spears* Hearing Testimony

On September 2, 2015, while housed at the GEU, Plaintiff asked Lieutenant De Los Santos if he could be moved to a different dorm because Plaintiff believed he was in imminent danger and he feared for his safety. Lieutenant De Los Santos agreed with Plaintiff and indicated that he would be moved to a different area. However, Lieutenant De Los Santos never moved Plaintiff, and Plaintiff believes this was due to "lingering hostility" between himself and De Los Santos arising from an August 8, 2014 chow hall incident which resulted in Plaintiff filing a grievance against De Los Santos.

The next day, on September 3, 2015, Plaintiff was assaulted by four Vallucco gang members. Officer Santellano watched the assault and did not try to assist Plaintiff or to stop the assault. As soon as the assault was over, Plaintiff cried out that his right ankle was broken. However, Captain Martinez ordered Plaintiff to walk back to the sally port, some twenty feet, despite the intense pain. Captain Martinez then called for a wheelchair which arrived about two minutes later.

### (2)   Plaintiff's Grievances

In his Step 1 grievance (Grievance No. 2016088690), dated February 3, 2016, Plaintiff complained that he had prepared a grievance at the GEU on September 14, 2015 but that he never received a response. (D.E. 81, p. 9). Plaintiff further complained that prison officials had denied Plaintiff his right to access the courts with regard to the events occurring in September 2015. (D.E. 81, p. 9). In describing the assault by the gang

members, Plaintiff identified each of the Security Defendants as playing a role in failing to protect Plaintiff.  (D.E. 81, p. 9-10).  The Step I grievance reflects that, on February 8, 2016, it was returned to Plaintiff by Officer J. Garcia as untimely filed after the expiration of the grievable time period.  (D.E. 81, p. 10).

Plaintiff did not file a Step 2 grievance in response to the denial of Grievance No. 2016088690 at the Step 1 level.   Rather, Plaintiff filed another Step 1 Grievance (Grievance No. 2016089123), dated February 8, 2016, in which he complained that Officer Garcia had denied Plaintiff the right to file a grievance due to the failure of the GEU to respond to his grievance filed in September, 2015.  (D.E. 81, p. 11).  Plaintiff states that "[O]fficer Garcia must not have read or understood [Plaintiff's] grievable issue" contained in Grievance no. 2016088690.  (D.E. 81, p. 11).

Plaintiff's Step 1 grievance was investigated and subsequently reviewed by McConnell Unit Assistant Warden C. Furr.  (D.E. 81, p. 12, D.E. 84-2).  In denying Plaintiff relief on April 25, 2016, Assistant Warden Furr found no record showing that Plaintiff had ever submitted a grievance in September, 2015 at the GEU.  (D.E. 81, p. 12).   Thus, the reviewing officer found "no evidence to substantiate [Plaintiff's] allegations that [he was] being denied the right to the grievance process."  (D.E. 81, p. 12).

In a Step 2 grievance dated April 26, 2016, Plaintiff appealed from the denial of his Step 1 grievance (Grievance No. 2016089123).  (D.E. 81, pp. 13-14).  Plaintiff described the violent assault against him that occurred on September 3, 2015, and recounted the Security Defendants' conduct on that day.  (D.E. 81, p. 13).  The Grievance

Investigation Worksheet at the Step 2 level summarized the issue presented as whether Plaintiff was denied the right to file a grievance remedy. (D.E. 81, p. 15). The Step 2 reviewing officer denied relief on June 6, 2016, finding that no additional information had been presented to change the outcome of the Step 1 response. (D.E. 81, p. 14).

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 215 (2006).

The TDCJ provides a two-step procedure for presenting administrative grievances. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam).  Step 1 requires the inmate to present an administrative grievance at his unit within fifteen days from the date of the complained-of incident.  *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The inmate should then receive a response from the unit official, and if unsatisfied with the response, the inmate has fifteen days to appeal by filing a Step 2 grievance, which is handled at the state level.  *Id.*

The Fifth Circuit takes "a strict approach to the exhaustion requirement."  *See Randle v. Woods*, 299 F. App'x 466, 467 (5th Cir. 2008) (citing *Woodford*, 548 U.S. at 92-93); *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003), (per curiam), *overruled by implication on other grounds by Jones*, 549 U.S. at 216.  Both steps of the TDCJ's administrative grievance process must be completed in order to file suit in federal court. *Id* at 515-16 ("[A] prisoner must pursue a grievance through both steps for it to be considered exhausted.").  *See also Dillion v. Rogers,* 596 F.3d 260, 268 (5th Cir. 2010) ("under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly.").

Courts are free to find that exhaustion has been satisfied in certain circumstances where procedural requirements for filing a timely and proper grievance are ignored and the claims asserted therein are instead denied on their merits.  For example, the exhaustion requirement is satisfied when the institutional decision-maker denies a grievance on the merits even though it could have been resolved for failure to comply

with a procedural requirement, such as the fifteen-day requirement for filing a Step 1 grievance from the complained-of incident. *See Eubanks v. Naik*, No. 3:11-CV-432, 2014 WL 1117408, at *4 (S.D. Tex. Mar. 19, 2014). *See also Gates v. Cook*, 376 F.3d 323, 331 & n.6 (5th Cir. 2004) (holding that prison officials could not argue that a prisoner's grievance failed to comply with procedural rules when the officials had looked past the purported technical defect and rejected the grievance for substantive reasons). "[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action." *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

The Security Defendants assert in their summary judgment motion that Plaintiff failed to exhaust his administrative remedies with regard to his failure to protect claims against them. (D.E. 71, pp. 6-8). Specifically, they contend that: (1) Plaintiff has presented no evidence to indicate he ever filed a timely grievance from the September 3, 2015 events; (2) the only issue Plaintiff grieved at the Step 2 level was his claim concerning the denial of his right to the grievance process, which is irrelevant to the failure to protect claims against the Security Defendants; and (3) prison officials did not investigate any failure to protect claims in connection with Grievance No. 2016089123 and, therefore, did not respond substantively to those claims at the Step 2 level. (D.E. 71, pp. 6-8).

Plaintiff counters that he, in fact, filed a Step 1 grievance at the GEU on September 14, 2015, to which he never received a response. (D.E. 80, p. 2). He contends

that he identified each of the Security Defendants in his Step 1 grievance filed on February 3, 2016 (Grievance No. 2016088690), which was dismissed as untimely.  (D.E. 80, p.2).   According to Plaintiff, his Step 1 grievances in both Grievance Nos. 2016088690 and 2016089123 were submitted together to prison officials and that his Step 2 grievance in Grievance No. 2016089123, therefore, served as his appeal from the denial of the Step 1 grievance in Grievance No. 2016089123 as well as the Step 1 grievance in Grievance No. 2016089123.  (D.E. 80, pp. 2-3).   Plaintiff argues that prison officials investigated at the Step 2 level his substantive failure to protect claims which had been presented in his "untimely" Step 1 grievance (Grievance No. 2016088690).  (D.E. 80, pp. 2-3).   As such, Plaintiff claims that his prison officials waived any such procedural deficiencies in dismissing Grievance No. 2016088690 as untimely by investigating the subsequent Step 2 grievance and effectively rendering a decision on the merits.  (D.E. 80, pp. 5-7).

In this case, the competent summary judgment evidence demonstrates that Plaintiff failed to exhaust his administrative remedies with respect to his failure to protect claims against the Security Defendants.  While claiming that he filed a timely Step 1 grievance in September of 2015 complaining about the events of September 3, 2015, Plaintiff has presented no evidence to substantiate his conclusory claim about the existence of this Step 1 grievance.  Rather, the competent summary judgment evidence reveals no record of this grievance ever being submitted to the GEU.  (D.E. 81, p. 12; D.E. 84-2).

It is undisputed that Plaintiff filed a Step 1 grievance (Grievance No. 2016088690), dated February 3, 2016, in which Plaintiff described the assault by the gang members on September 3, 2015 and identified each of the Security Defendants as failing to protect Plaintiff.  However, this grievance was returned to Plaintiff on February 8, 2016 as untimely filed.

Rather than file a Step 2 grievance from the denial of Grievance No. 2016088690 at the Step 1 level, Plaintiff submitted another Step 1 Grievance (Grievance No. 2016089123), dated February 8, 2016.  In this grievance, Plaintiff complained about the denial of his right to file a grievance on the basis that the GEU failed to respond to his grievance filed in September, 2015.  After an investigation was conducted, Assistant Warden Furr responded on April 25, 2016 and found no record of Plaintiff ever having submitted a grievance in September of 2015.

Contrary to Plaintiff's contentions, his Step 2 grievance dated April 26, 2016 constituted his appeal only from the denial of his Step 1 grievance in Grievance No. 2016089123.[4]  (*See* D.E. 81, pp. 13-14).  The Grievance Investigation Worksheet for this Step 2 grievance reflects the existence of one grievable issue, whether Plaintiff was denied the right to file a grievance.  (D.E. 81, p. 15).  Despite the fact Plaintiff described the September 3, 2015 assault and the Security Defendants' conduct in his Step 2 grievance, the worksheet does not contain anything to suggest that the substantive issues involving his failure to protect claims were presented, addressed, and resolved on the

---

[4] As discussed above, Plaintiff's Step 1 grievance in Grievance No. 2016088690 was returned to him on February 8, 2016.  (D.E. 81, p. 10).  No evidence has been presented indicating that he complied with TDCJ procedures and filed a Step 2 grievance within fifteen days of February 8, 2016, to appeal Grievance No. 2016088690.  *See Johnson*, 385 F.3d at 515.

merits.  Furthermore, the Step 2 reviewing officer denied relief by finding that no additional information had been presented to change the outcome of the Step 1 response in Grievance No. 2016089123.  (D.E. 81, p. 14).

The uncontroverted summary judgment evidence demonstrates that the only issue exhausted through the TDCJ's two-step administrative process in Grievance No. 2016089123 was Plaintiff's claim concerning the denial of his right to file a grievance. Plaintiff otherwise presents no competent summary judgment evidence to establish that the procedural deficiency in his failing to exhaust the failure to protect claims against the Security Defendants had been waived.[5]  Accordingly, the Security Defendants should be entitled to summary judgment in their favor and dismissal of Plaintiff's failure to protect claims with prejudice for lack of exhaustion.[6]

## The Medical Defendants' Motion for Summary Judgment

### A.    Summary Judgment Evidence

The Security Defendants offer the following summary judgment evidence:

Exh. A:    Affidavit of Dr. Steven Bowers along with various attachments (D.E. 86-1).

---

[5]  Several of the Medical Defendants previously filed a motion to dismiss for failure to exhaust administrative remedies with respect to Plaintiff's deliberate indifference claims.  (D.E. 26).  In the May 5, 2017 M&R, the undersigned considered the grievances attached to the complaint which consisted of the Step 1 grievance in Grievance No. 2016088690 and the Step 2 Grievance in Grievance No. 2016089123.  (D.E. 61, pp. 4-5).  Based on these grievances, which were also submitted in connection with the Security Defendants' summary judgment motion, the undersigned found that prison officials had waived any procedural deficiencies by investigating the subsequent Step 2 grievance and rendering a decision on the merits.  (D.E. 61, p. 9-10).  When considering the motion to dismiss, however, the undersigned did not have before it Plaintiff's Step 1 grievance in Grievance No. 2016089123 as well as the Grievance Investigation Worksheets.  This additional evidence demonstrates that Plaintiff's failure to protect claims were neither addressed nor otherwise exhausted.

[6] A dismissal for failure to exhaust is generally without prejudice.  However, because any new grievance filed by Plaintiff would be time-barred under the TDCJ's grievance procedure and the failure to exhaust cannot be cured, dismissal with prejudice is appropriate in this case.  *See Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) (holding that dismissal with prejudice warranted when administrative relief is time barred or otherwise precluded).

Exh. B:       Nursing Shift Roster for September 3-10, 2015 (D.E. 86-2).

In addition to his verified complaint and testimony at the Spears hearing, Plaintiff offers the following summary judgment evidence:

Exhs. A through C:    Portions of Plaintiff's Medical Records (D.E. 101-2, pp. 1-4).

Exh. C-01:   Policy on Offenders in Segregation/Restrictive Housing (D.E. 10-2, p. 5).

Exh. C-02:   LVN's Scope of Practice in Texas (D.E. 101-2, p. 6).

Exh. D:      Pre-Segregation Note, dated September 3, 2015 (D.E. 101-2, p. 7).

Exh. D-01:   GEU Daily Nursing Assignments (D.E. 101-2, p. 8).

Exh. D-02:   GEU Nursing Schedule for September, 2015 (D.E. 101-2, p. 9).

Exhs. D-03 and D-04:    Prescriptive Authority Agreement (D.E. 101-2, pp. 10-11).

Exh. D-06:   Policy on Access to Diagnostic Services (D.E. 101-2, p. 12).

Exh. D-07:   Policy on Transfers of Offenders with Acute Conditions (D.E. 100, p. 27).

Exh. E-02:   Photograph of Plaintiff's ankle (D.E. 100, p. 29).

Exh. E-03:   Photographs of Plaintiff dated September 3, 2015 (D.E. 100, pp. 31-32).

Exh. F:      Portions of Plaintiff's Medical Records (D.E. 100, pp. 33-35).

Accordingly, the competent summary judgment evidence establishes the following:

### (1)  Plaintiff's Verified Complaint and *Spears* Hearing Testimony

Following the assault by the gang members on September 3, 2015, Plaintiff was taken to the infirmary where he was seen by the GEU medical staff.  Plaintiff told the medical staff that that he believed his right ankle was broken and that he needed to see a doctor.  The medical staff disagreed and stated that they believed it was a "minor sprain." Plaintiff requested pain medication, and it was denied.  Plaintiff also had lacerations on his face, hands, and legs, but medical did not clean his wounds. Plaintiff was subsequently cleared for release to pre-hearing detention (PHD).

While in PHD, Plaintiff's ankle continued to swell and to cause him extreme pain. He would not eat unless his tray was brought directly to him because it hurt too much to move around his cell.  He repeatedly asked the medical staff on rounds to let him see a doctor, for pain medication, and for ice to help with the swelling, but his requests were denied.  Finally, on September 10, 2015, Plaintiff pled with NP Wagner to examine his ankle. She did so, and then ordered x-rays and that Plaintiff be seen by Dr. Fernando Cesani.  The x-ray revealed Plaintiff as having a broken right ankle.  On September 22, 2015, Plaintiff underwent surgical repair of his ankle which included plates and screws being installed.

### (2)  The Parties' Relevant Medical Evidence

The Texas Board of Nursing (BON) defines an LVN's scope of practice as not including medical diagnosis or prescription of therapeutic or corrective measures.  (D.E. 86-1, p. 55).  The BON further set forth that the LVN's practice must be performed under

the supervision of an RN, an NP, a physician, or a physician's assistant.  (D.E. 86-1, p. 14).

After Plaintiff was taken to the infirmary in a wheelchair on September 3, 2015 following the assault on him by other inmates, LVN Flores examined Plaintiff with regard to his complaints concerning his right ankle.  (D.E. 86-1, p. 14).  As reflected in a Pre-Segregation Note prepared by LVN Flores during the afternoon of September 3, 2015, Plaintiff presented with upper and lower lip contusions, a two centimeter abrasion to the right side of his head, a five centimeter superficial laceration to the back of his right knee, minor swelling and minimal flexion/extension to the right ankle.  (D.E. 86-1, p. 14).  The Pre-Segregation Note further reflects that LVN Flores took Plaintiff's vital signs and noted as follows: (1) Plaintiff was alert and oriented times three; (2) his breathing was even and unlabored; and (3) he showed no acute signs of symptoms or distress.  (D.E. 86-1, p. 14).

Plaintiff states in his declaration that LVN Flores told him that he only had a sprained ankle and did not have to see the doctor.  (D.E. 101, p. 3).  According to the Pre-Segregation Note, however, LVN Flores consulted with the medical provider, NP Wagner, who then ordered crutches for Plaintiff for two weeks, 600mg of Ibuprofen daily for ten days, and an x-ray to be performed on the right foot.  (D.E. 86-1, p. 16).  These orders were entered into the medical record at 2:56 p.m. on September 3, 2015.  (D.E. 86-1, p. 16).  Plaintiff has presented evidence indicating that an individual named "Declet" was the on-call medical provider on September 3, 2015 and not NP Wagner.  (D.E. 101-2, p. 8).

Plaintiff was placed in Pre-hearing Detention (PHD), or transient status, pending the results of the investigation into his assault.  (D.E. 86-1, p. 16).  The Pre-Segregation Note reflects that Plaintiff gave his understanding to LNV Flores about the plan and the provided instructions on the use of the crutches.  (D.E. 86-1, pp. 16-17).  LVN Flores, according to the Pre-Segregation Note, also instructed Plaintiff on how to ask for medical attention while in the PHD.  (D.E. 86-1, p. 14).

Plaintiff states in his declaration that LVN Flores denied him pain medication by not provided him with the ten-day prescription of Ibuprofen on September 3, 2015.  (D.E. 101, pp. 1, 3).  A Patient Medication Compliance Report for the relevant time period reflects that Plaintiff was administered three doses of Ibuprofen 600mg on September 4 and 5, 2015.  (D.E. 101-2, p. 3).  This report indicates, however, that Plaintiff was prescribed Ibuprofen 600mg for the ten-day period and that his compliance rate was only 15%.  (D.E. 101-2, p. 3).  Plaintiff further states in his declaration that he was released from the medical department to PHD without any crutches or an ace bandage wrap.  (D.E. 101, p. 3).

LVN Flores copied numerous people with the Pre-Segregation Note, including RN White, NP Wagner, and Mental Health Counselor Schales.  (D.E. 86-1, p. 17).  RN White and MHC Schales did not observe or otherwise treat Plaintiff on September 3, 2015.  RN White did not work at the GEU unit from September 3-10, 2016.  (D.E. 86-1, p. 62).  From September 3-10, 2015, there was one radiology technician employed at the GEU to take x-rays, Mary Alice Longoria.  (D.E. 86-1, p. 85).  Her schedule reflects that, during

this time period, she did not work from September 3-7, 2015, and returned to work on Tuesday, September 8, 2015.  (D.E. 86-1, p. 85).

While Plaintiff was in PHD, nursing personnel conducted daily rounds to check on his condition.  (D.E. 86-1, p. 6).  Nurse practitioners, such as NP Wagner, do not make any these daily rounds.  (D.E. 86-1, p. 6).   The rounds are tracked on a daily basis by the medical staff on a document called the Certification and Record of Segregation Visits. (D.E. 86-1, pp. 66-82).  This document indicates that the daily rounds were performed by: (1) LVN Flores on September 3, 2015; (2) LVN Nancy Piwetz on September 4, 2015; (3) LVN Frances Chennault and LVN Donna Herschap on September 5, 2015; (4) LVN Chennault on September 6, 2015; (5) LVN Heather Glew on September 7, 2015; (6) LVN A. Dehon on September 9, 2015; and (7) LVN Jessica Bernal on September 10, 2015. (D.E. 86-1, pp. 66-81).  The document further noted no complaints from Plaintiff by any of the medical staff making the rounds from September 3-10, 2015.  (D.E. 86-1, p. 6, 66-81).  Plaintiff states in his declaration, however, that he complained daily from September 3-10, 2015, to Correctional Officer Martinez,[7] who then relayed Plaintiff's complaints to the medical department but to no avail.  (D.E. 101, p. 3).

According to Plaintiff, NP Wagner walked through the PHD on September 10, 2015, heard Plaintiff's complaints, and evaluated Plaintiff's right leg.  (D.E. 101, pp. 3-4).  NP Wagner then ordered an x-ray to take place on Plaintiff's ankle.  (D.E. 86-1, p.

---

[7] Plaintiff does not indicate that "Correctional Officer Martinez" was the same person as "Captain Martinez," who was identified as a defendant in his original complaint.

20).  X-rays were taken of Plaintiff's right ankle and foot on September 10, 2015.  (D.E.

86-1, p. 22).  The radiology report, dated September 11, 2015, provided:

> Imaging of the right foot and ankle demonstrate a posteriorly displaced oblique lateral distal tibial fracture.  There is widening of the medial clear space.  Moderate soft tissue swelling is seen about the lateral ankle.

(D.E. 86-1, p. 22).  Plaintiff was brought to the clinic on September 10, 2015, and

evaluated by Physician Assistant (PA) Avrian Mendez.  (D.E. 86-1, p. 25).  PA Mendez

noted that Plaintiff was not in any apparent distress, that there was some swelling in his

right ankle, that he had a decreased range of motion, and that the neurological and

vascular functions were intact.  (D.E. 86-1, p. 25).  PA Mendez placed Plaintiff's right

foot in a posterior splint, continued the crutches and Ibuprofen, and directed Plaintiff to

be seen at the Hospital Galveston Orthopedic Clinic on September 14, 2015.  (D.E. 86-1,

p. 25).

Plaintiff's appointment with the orthopedic clinic on September 14, 2015 was

cancelled.  (D.E. 86-1, p. 28).  On September 15, 2015, Plaintiff was seen in the medical

department complaining that his medications ran out and that he was in considerable

pain.  (D.E. 86-1, p. 28).  The nurse on duty, LVN Lindsay Roschetzky, received doctor's

orders to prescribe Tylenol 3 with codeine for Plaintiff for one week.  (D.E. 86-1, p. 28).

The nurse confirmed that the "[p]osterior splint to right leg remain[ed] intact."  (D.E. 86-

1, p. 28).

On September 17, 2015, Plaintiff was seen at the Hospital Galveston Orthopedic

Clinic.  (D.E. 86-1, pp. 31-35).  The Progress Notes prepared by Dr. Matthew Comley

indicate that Plaintiff had no skin changes or obvious deformity, moderate swelling over

21 / 35

the lateral and anterior ankle joint, and palpable pedal pulses.  (D.E. 86-1, p. 33).  Dr. Comley's plan consisted of surgery on the right fibula, application of a shortleg splint, non-bearing weight on the right leg, Tylenol #3 for pain, and Robaxin for pain and muscle relief.  (D.E. 86-1, p. 33).

On September 22, 2017, Plaintiff underwent surgery to repair his right ankle. (D.E. 86-1, pp. 37-38).  The surgery was successful with no immediate complications. (D.E. 86-1, p. 38).   Plaintiff was provided his medications as well as discharge instructions to care for his post-surgery wound and was discharged to his prison unit on the same say as his surgery.  (D.E. 86-1, pp. 40-42).

## B.   Qualified Immunity and Deliberate Indifference

The Medical Defendants move for summary judgment as to Plaintiff's deliberate indifference claims on the grounds they are entitled to qualified immunity.  (D.E. 86, pp. 3-11).  The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.   *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).  To discharge this burden, the plaintiff must satisfy a two-prong test."  *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251-52 (5th Cir. 2005).   First, he must claim that the defendants committed a

constitutional violation under current law. *Id.* (citation omitted). Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. *Id.* While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

### (1)   Step 1 – Constitutional Violation

Prisoners are protected from cruel and unusual punishment by the Eighth Amendment. While not mandating a certain level of medical care for prisoners, the Eighth Amendment imposes a duty on prison officials to ensure that inmates receive adequate medical care. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Id.* at 104-05. A prison official acts with deliberate indifference if she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. 825, 847 (1994). The official must both be aware of facts from which an inference of

23 / 35

substantial risk of serious harm can be drawn and also draw the inference. *Easter*, 467 F.3d at 463. A prison official's knowledge of substantial risk may be inferred if the risk was obvious. *Id.*

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted). A plaintiff must show that the official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for his serious medical needs. *Domino*, 239 F.3d at 756 (citation omitted).

"[U]nsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012). *See also Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993), *abrogated on other grounds by Arvie v. Broussard*, 42 F.3d 249 (5th Cir. 1994) (per curiam) ("It is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim"). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). Lastly, delays in medical care are actionable as an Eighth Amendment violation to the extent that the delay constitutes deliberate indifference and results in substantial harm. *See Easter*, 467

F.3d at 464 (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).  Deliberate indifference can be manifested by prison personnel who intentionally deny or delay access to medical care.  *Estelle*, 429 U.S. at 104-05.

The Medical Defendants contend in their summary judgment motion that Plaintiff cannot show: (1) he was denied medical care by any of the GEU medical staff. Including LVN Flores and NP Wagner; (2) LVN White and MHC Schales were not personally involved in the medical care provided to Plaintiff; and (3) Plaintiff was not substantially harmed by any delay in treatment.  (D.E. 86, pp. 4-10).  Thus, the Medical Defendants assert that Plaintiff cannot establish an Eighth Amendment claim of deliberate indifference to his serious medical needs.

Plaintiff responds that LVN Flores acted with deliberate indifference by: (1) refusing to believe Plaintiff had a severe injury to his right ankle that necessitated the urgent care of a physician or doctor; (2) denying Plaintiff his medications and other treatment; (3) failing to contact the on-duty nurse in charge or medical provider; and (4) contacting instead NP Wagner who was not officially on duty.  (D.E. 100, p. 11). Plaintiff's main complaint against NP Wagner centers on the fact she was not listed as the GEU's on-call medical provider on September 3, 2015.  Lastly, Plaintiff acknowledges that he misidentified LVN White and MHC Schales and that they are not proper defendants in this case.  (D.E. 100, pp. 17, 19).

To show deliberate indifference, Plaintiff states in his declaration that LVN Flores communicated to him that he only had an ankle sprain with no need to see a doctor and that she then released him from the medical department to PHD without pain medication,

25 / 35

crutches, or an ace bandage wrap.  (D.E. 101, pp. 1, 3).  Even assuming LVN Flores verbally downplayed Plaintiff's injury, the objective medical evidence shows that she was attentive to Plaintiff's medical issues on September 3, 2015 in the wake of the assault upon him.  The objective medical evidence demonstrates that LVN Flores: (1) examined Plaintiff in a comprehensive fashion after he arrived in the infirmary on a wheelchair and took his vital signs; (2) noted that Plaintiff was alert and had neither labored breathing nor other acute signs of distress; (3) consulted with NP Wagner who then ordered crutches for Plaintiff for two weeks, 600mg of Ibuprofen daily for ten days, and an x-ray to be performed on the right foot; (4) instructed Plaintiff on the use of the crutches and how to ask for medical attention while confined in PHD pending the investigation into the attack on him; and (5) copied numerous people with the Pre-Segregation Note, including RN White, NP Wagner, and Mental Health Counselor Schales.  (D.E. 86-1, pp. 14-17).

While Plaintiff has presented evidence showing that another nurse practitioner named "Declet" was the on-call medical provider on September 3, 2015, the undisputed evidence reveals that LVN Flores contacted NP Wagner on that day and that NP Wagner was a medical provider for the GEU.  Furthermore, Plaintiff's Patient Medication Compliance Report shows that Plaintiff was prescribed 600mg of Ibuprofen daily for ten days to start on September 3, 2015.  (D.E. 101-2, p. 3).  This report does not confirm Plaintiff's assertion about not receiving his pain medication but only shows that his compliance rate in actually taking the pain medication was 15%.  (D.E. 101-2, p. 3). Plaintiff presents no evidence to corroborate his unsubstantiated assertion that LVN

Flores denied him his prescribed medication on September 3, 2015. *See Baneulos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnosis, and medications may rebut an inmate's allegations of deliberate indifference"); *Turner v. Moffett*, No. 3:12-CV-220, 2013 WL 5214070, at *3 (S.D. Tex. Sep. 17, 2013) (recognizing that the court may find allegations to be implausible when contradicted by the objective medical evidence); *Alexander v. Dickerson*, No. 6:08cv404, 2009 WL 2244139, at *9 (E.D. Tex. Jul. 27, 2009) (concluding that conclusory allegations or unsubstantiated assertions cannot defeat a summary judgment motion).

The Pre-Segregation Note prepared by LVN Flores on September 3, 2015 and the clinical note prepared by PA Mendez on September 10, 2015 contradicts Plaintiff's unsubstantiated claim that he was not provided with crutches.  (D.E. 86-1, p 16). Plaintiff's complaints about LVN Flores's actions on September 3, 2015, including his assertion that she failed to wrap his leg with an ace bandage, at best amount to his dissatisfaction or disagreement with the treatment he received by her, which falls short of establishing the requisite deliberate indifference. *Sama*, 669 F.3d at 590. Likewise, LVN Flores's failure to diagnose Plaintiff with a broken ankle in connection with her initial examination of Plaintiff does not constitute deliberate indifference.  She is not permitted pursuant to the LVN's scope of practice to diagnose or order particular treatment for a patient. (D.E. 86-1, p. 55).

With regard to NP Wagner, the objective medical evidence reflects that she consulted with LVN Flores on September 3, 2015 and ordered Plaintiff to receive crutches, pain medication, as well as an x-ray on his right foot.  Plaintiff complains that

27 / 35

he suffered needlessly from September 3-10, 2015, during his time in PHD and before he received his x-ray on September 10, 2015.

Plaintiff states that he complained daily to Correctional Officer Martinez about his leg and his severe pain. (D.E. 101, p. 3). Plaintiff, however, points to no evidence to suggest that he made these complaints directly to NP Wagner or LVN Flores. Despite receiving instructions from LVN Flores about requesting medical attention during his stay at the PHD, there are no records of any sick call requests being made by Plaintiff from September 3 through 10, 2015. The objective medical evidence reflects instead that daily rounds were performed each day by at least one nurse, including LVN Flores on September 3, 2015, and that there were no documented complaint from Plaintiff by any of the nurses making the rounds. (D.E. 86-1, pp. 66-81). Plaintiff's statements in his declaration reflect that NP Wagner responded immediately to his complaints of pain in his right leg on September 10, 2015, and ordered an x-ray to take place that day. (D.E. 101, pp. 3-4). Thus, Plaintiff has failed to present any competent summary judgment evidence showing that NP Wagner or LVN Flores acted with deliberate indifference to his serious medical needs while Plaintiff was in PHD.

Liberally construed, Plaintiff appears to contend that NP Wagner and LVN Flores acted with deliberate indifference by unnecessarily delaying Plaintiff proper medical care for his serious broken ankle. Plaintiff, however, has failed to show that these defendants or any other GEU medical official intentionally delayed Plaintiff's access to medical care or that any delay in diagnosing his broken ankle and sending him to surgery resulted in substantial harm. *See Easter*, 467 F.3d at 464.

While NP Wagner initially ordered an x-ray on Plaintiff's right foot on September 3, 2015 and Plaintiff did not receive an x-ray until September 10, 2015, such delay was due mainly to the fact that the x-ray technician was unavailable from September 3-8, 2015. (D.E. 86-1, p. 85). Thus, any delay in Plaintiff receiving an x-ray was not attributable to any intentional conduct on NP Wagner's part. *See Frederick v. Pittman*, No. 4:09-CV-1455, 2014 WL 4729407, at *8 (Sep. 23, 2014) (recognizing that delay in receiving medical care in the form of an x-ray does not constitute deliberate indifference due to the x-ray technician being on holiday leave).

Even assuming the actions of the GEU's medical staff, including the care provided by LVN Flores and NP Wagner, unnecessarily delayed Plaintiff's medical care, the competent summary judgment evidence demonstrates that Plaintiff was not substantially harmed by any delay. The objective medical evidence specifically shows that: (1) when Plaintiff was examined on September 3, 2015, his right ankle was described as having minor swelling and minimal flexion/extension (D.E. 86-1, p. 14); (2) the x-rays taken on September 10, 2015, revealed a fracture to his right ankle with moderate soft tissue swelling (D.E. 86-1, p. 22; and (3) PA Mendez evaluated Plaintiff's right ankle and observed some swelling in his right ankle, that he had a decreased range of motion, and that the neurological and vascular functions were intact. (D.E. 86-1, p. 25). No evidence was presented to indicate that Plaintiff was in need of emergent care as of September 10, 2015. Indeed, the University of Texas Medical Branch's Orthopedic Referral Guidelines classified the type of fracture sustained by Plaintiff as an "urgent ortho referral" but not

one requiting emergency attention as his foot was neither in danger of neurovascular compromise nor significantly displaced.  (D.E. 86-1, p. 44).

On September 17, 2015, Plaintiff was seen at the Hospital Galveston Orthopedic Clinic where the Progress Notes prepared by Dr. Comley indicated that Plaintiff had no skin changes or obvious deformity, moderate swelling over the lateral and anterior ankle joint, and palpable pedal pulses.  (D.E. 86-1, p. 33).  Following Dr. Comley's evaluation, Plaintiff's surgery was scheduled to take place five days after consultation with the specialist and not immediately.  This evidence again shows that Plaintiff's ankle injury was not one requiring emergency treatment.   Plaintiff subsequently received successful surgery to his right ankle on September 22, 2017.  (D.E. 86-1, pp. 37-38).  The surgery was successful with no immediate complications.  (D.E. 86-1, p. 38).  Thus, when viewing the evidence in a light most favorable to Plaintiff, no genuine issues of material fact exist as to whether LVN Flores or NP Wagner acted with deliberate indifference to Plaintiff's serious medical needs or whether Plaintiff was substantially harmed by any delay in having his right ankle x-rayed or in receiving surgery on his ankle less than three weeks after the injury occurred.

Lastly, Plaintiff acknowledges that Nurse White and MHC Schales are not proper defendants in this case, and the competent summary judgment establishes that neither one of these defendants were personally involved in Plaintiff's medical care.  *See Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").  Accordingly, for purposes of the qualified immunity analysis, the competent summary judgment evidence demonstrates that

Plaintiff has failed to state an Eighth Amendment claim of deliberate indifference against any one of the Medical Defendants.

### (2)   Step 2 – Objective reasonableness

Because Plaintiff has failed to state a constitutional violation as to the Medical Defendants, it is unnecessary to examine whether their actions were objectively reasonable.  *See Saucier*, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).  Thus, it is respectfully recommended that the Medical Defendants be granted summary judgment in their favor as to Plaintiff's deliberate indifference claims and that those claims be dismissed with prejudice.

### Plaintiff's Motion for Leave to Amend or Supplement the Complaint

On September 8, 2017, the Court received Plaintiff's Motion for Leave to Amend and Supplement the Original Complaint.  (D.E. 98).  Therein, Plaintiff seeks to add the following eight GEU medical officials to this action: (1) LVN G. Bernal; (2) LVN Emerson; (3) LVN Lindsey Roschetzky; (4) LVN Piwetz; (5) LVN Chennault; (6) LVN Donna Herschap; (7) LVN Glew; and (8) LVN Ochoa.  (D.E. 98).  Plaintiff seeks monetary relief against these new defendants.  (D. E. 98, pp. 2-4).  The Medical Defendants respond that Plaintiff's motion should be denied on the grounds that the proposed amendment would cause undue prejudice, is not offered in good faith, and would be futile.  (D.E. 103).

In an Order entered on August 18, 2016, Plaintiff was instructed that a complete amended complaint must be attached to any motion to amend.  (D.E. 7, ¶ 7).  On two prior occasions, Plaintiff has moved to amend this complaint without attaching copy of a proposed amended complaint.  (D.E. 60, 68).  The undersigned denied both of these motions for failure to attach a proposed amended complaint to his motion to amend. (D.E. 63, 73).

Plaintiff has again failed to attach a proposed amended complaint to his current motion seeking leave to amend.  Accordingly, Plaintiff's motion is denied based upon his failure to comply with the August 16, 2016 Order.  Even if the undersigned were to overlook this procedural deficiency, Plaintiff's motion should be denied as futile as discussed below.

 Amendments before trial are governed by Rule 15(a) of the Federal Rules of Civil Procedure. A party may amend its pleading once as a matter of course within 21 days after serving it. FED. R. CIV. P. 15(a)(1)(A). In all other cases a party may amend its pleading only with the opposing party's written consent or the court's leave. FED. R. CIV. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.*

Determining when justice requires permission to amend rests within the discretion of the court.  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Nilson v. City of Moss Point, Miss,* 621 F.2d 117, 112 (5th Cir. 1980).  The district court need not grant leave to amend if the amendment(s) sought would be futile.  *Central Laborer's Pension Fund v. Integrated Elec. Svcs. Inc.,* 497 F.3d 546, 556 (5th Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Allowing Plaintiff to amend his complaint at this time would be futile.  Plaintiff provides few specific allegations in his motion to amend.  He generally alleges that the proposed new defendants acted with deliberate indifference to his serious ankle condition in connection with his initial evaluation on September 3, 2015 and the daily rounds undertaken by the new defendants while Plaintiff was housed in PHD from September 3-9, 2015.  (D.E. 98, pp. 1-2).  A review of Plaintiff's response to the Medical Defendants' summary judgment reveals the following relevant assertions against the proposed new defendants: (1) on September 3, 2015, Plaintiff communicated to LVNs but IFlores, Bernal, and Emerson that he had been violently attacked; (2) LVNs Bernal and Emerson observed as LVN Flores responded to Plaintiff's complaints; (3) LVN Bernal echoed LVN Flores in informing Plaintiff that Plaintiff only suffered a minor sprained ankle and proceeded to contact NP Wagner who was not the on-call provider; (4) all of the new defendants failed to provide Plaintiff with adequate medical treatment or otherwise delayed medical treatment while he was confined in PHD from September 3-9, 2015. (D.E. 100, pp. 3, 11, 15, 21).

None of the allegations raised by Plaintiff in connection with his proposed amendment state a claim of deliberate indifference against any one of the proposed new defendants, who all were employed as medical staff at the GEU.  The objective medical evidence discussed above in connection with the Medical Defendants' summary judgment motion demonstrates that the GEU's medical staff did not act with deliberate indifference to Plaintiff's serious medical needs.  Furthermore, this evidence shows that any delays in Plaintiff receiving an x-ray on his right ankle and surgery were not caused

by any medical officials' deliberate indifference and did not result in substantial harm to Plaintiff.

Accordingly, the undersigned recommends that Plaintiff's Motion for Leave to Amend and Supplement the Original Complaint (D.E. 98) be denied for failure to comply with a Court order and as futile.

## VI.   RECOMMENDATION.

For the foregoing reasons, it is respectfully recommended that: (1) the Security Defendants' Motion for Summary Judgment (D.E. 71) be GRANTED; (2) Plaintiff's Eighth Amendment failure to protect claims against Defendants Jeremy De Los Santos, Martinez, and Nicholas Santellano be dismissed with prejudice for failure to exhaust administrative remedies; (3) the Medical Defendants' Motion for Summary Judgment (D.E. 86) be GRANTED because they are entitled to qualified immunity as a matter of law; (4) Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Wagner, White, Flores, and Schales be DISMISSED with prejudice; and (5) Plaintiff's Motion for Leave to Amend or Supplement the Complaint.  (D.E. 98) be DENIED for failure to comply with a Court order and as futile.

Respectfully submitted this 8th day of January, 2018.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).